Michael A. Caddell (SBN 249469)
mac@caddellchapman.com
Cynthia B. Chapman (SBN 164471)
cbc@caddellchapman.com
Amy E. Tabor (SBN 297660)
aet@caddellchapman.com
CADDELL & CHAPMAN
628 East 9th Street
Houston TX 77007-1722
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

*Attorneys for Plaintiff and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| JOHN DICKERSON, *individually and on behalf of all others similarly situated,*<br><br>*Plaintiff,*<br><br>*v.*<br><br>ROCKET MORTGAGE, LLC,<br><br>*Defendant.* | Case No. __________<br><br>**CLASS ACTION COMPLAINT**<br><br>CLASS ACTION<br>JURY TRIAL DEMANDED |

**PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Plaintiff John Dickerson files this Original Class Action Complaint against Defendant Rocket Mortgage, LLC ("Rocket"). Rocket services Mr. Dickerson's home mortgage loan, which is insured by the Federal Housing Administration ("FHA"), and the FHA-insured loans of thousands of other Californians. In violation of federal law and rules promulgated by the U.S. Department of Housing and Urban Development ("HUD"), Rocket miscalculates the loan-to-value ratios that determine how long borrowers must pay FHA mortgage insurance premiums. As a result, Rocket requires borrowers who should owe only eleven years of premiums to pay premiums

for the entire lives of their mortgage loans. Plaintiff brings this action to recover his own damages under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 (“RESPA”), and to obtain, for himself and a class of California borrowers (the “Class”), injunctive relief under California’s Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. (“UCL”), and declaratory relief under 28 U.S.C. § 2201.

## I. Introduction

1. The FHA, a part of HUD, insures home mortgage loans made by private lenders so that borrowers can buy homes with smaller down payments than conventional lenders require. Every borrower with an FHA-insured mortgage pays a monthly mortgage insurance premium (“MIP”) to the FHA. How long the borrower pays depends on a single number fixed at closing: the loan-to-value (“LTV”) ratio, or the ratio of the loan amount to the value of the home. 12 U.S.C. § 1709(c)(2)(B); 24 C.F.R. § 203.284(a)(2). Under the rule HUD applies to every FHA loan with a case number assigned on or after June 3, 2013, a borrower whose LTV is 90% or less pays MIP for the first eleven years of the loan. HUD Handbook 4000.1, Appendix 1.0; HUD Mortgagee Letter 2013-04 (Jan. 31, 2013); Form HUD-92900-B (2/2020). A borrower whose ratio is above 90% pays MIP for the life of the loan. *Id.*

2. The loan amount used in that ratio is the “Base Loan Amount,” which HUD defines as the mortgage amount before any financed Upfront Mortgage Insurance Premium (“UFMIP”) is added. HUD Handbook 4000.1, Glossary (“Base Loan Amount”). HUD’s own form, HUD-92900-B, which FHA borrowers receive and sign when they apply for their loans, says so in plain language: the eleven-year term applies “if your mortgage had an original principal obligation (excluding financed UFMIP) with a loan-to-value (LTV) ratio of less than or equal to 90 percent.” Form HUD-92900-B (2/2020), at 2.

3. Rocket does not follow this HUD rule for calculating the LTV. Instead, Rocket adds the financed UFMIP back into the loan amount and calls the result the “Servicing LTV.” Because, as Rocket itself acknowledges, it “is standard for FHA loans to have the UFMIP financed into the loan,” that arithmetic pushes thousands of borrowers who closed at or slightly below a 90% LTV

ratio above it. Rocket then wrongly treats these loans as requiring life-of-loan MIP and requires the borrowers to pay premiums for nineteen years longer than HUD's rule allows.

4. Mr. Dickerson bought his home in West Sacramento in November 2021 with an FHA-insured loan. He made a down payment that brought the loan to exactly 90% of the home's appraised value, and he financed the UFMIP. His lender computed the loan-to-value ratio at 90.0000% (not including the UFMIP); the FHA underwriting transmittal confirmed the LTV was 90.000%; and the Closing Disclosure Mr. Dickerson signed accordingly projected mortgage insurance for "Years 1–11" and none for "Years 12–30." Rocket, however, applies its "Servicing LTV," which puts his loan-to-value ratio at 91.57%, and illegally treats the loan as carrying an additional nineteen years of MIP.

5. That classification makes Mr. Dickerson's loan less valuable. It committed him to 228 additional monthly premiums that HUD's rule does not require—tens of thousands of dollars over the life of the loan—and because FHA loans are assumable, it reduced the value of his 3.25% loan to any buyer who might later assume it. Plaintiff has repeatedly asked Rocket to fix the error, and Rocket has persistently refused, stating that it found "no error" according to its "internal systems." Between September 2025 and May 2026, Mr. Dickerson sent multiple notices of error under RESPA, as well as complaints to the Consumer Financial Protection Bureau ("CFPB") and the California Department of Financial Protection and Innovation ("DFPI"). Rocket conceded that "[t]he loan would have had a 90% LTV if the loan did not include the PMI and used the amount of $589,500.00," and a Rocket representative acknowledged that the UFMIP "can either be financed (added to the total loan amount) or paid at closing, but it remains separate from the LTV calculation." Rocket nevertheless refused to remove the thirty-year MIP obligation from Mr. Dickerson's loan.

6. Rocket did, however, offer Mr. Dickerson a supposed "remedy" that would profit Rocket and leave Mr. Dickerson much worse off. Its letters repeatedly told him that the way to eliminate the mortgage insurance was to refinance, and its later letters invited him to call Rocket's own sales team to "explore refinancing options." A refinance would generate new origination fees

and a new loan for Rocket, while requiring Mr. Dickerson to give up the 3.25% interest rate on his existing loan for one at prevailing rates, which today are more than double that. Rocket's misclassification practice thus steers borrowers toward a transaction that benefits Rocket at the borrower's expense.

7. Rocket's repeated refusal to correct this error, and its references to a policy of using a separate "Servicing LTV" according to its "internal systems," show that the error is not unique to Mr. Dickerson. It reflects a systematic policy of miscalculating LTVs that imposes illegal additional insurance obligations on thousands of California homeowners. Mr. Dickerson brings this action to recover his damages under RESPA and, on behalf of the Class, to require Rocket to treat FHA loans correctly under HUD rules and to obtain a declaration that Rocket's UFMIP-inclusive methodology violates federal law.

## II. Parties

8. Plaintiff John Dickerson is an individual who resides in West Sacramento, Yolo County, California. He is the borrower on an FHA-insured mortgage loan secured by his home, FHA Case No. 049-1716115-703, which Rocket services.

9. Defendant Rocket Mortgage, LLC is a Michigan limited liability company with its principal place of business at 1050 Woodward Avenue, Detroit, Michigan 48226. Rocket is the servicer of Plaintiff's loan and is approved by HUD as a Title II mortgagee in the FHA program. Rocket is licensed by DFPI under the California Residential Mortgage Lending Act ("CRMLA"). Rocket is registered with the California Secretary of State to do business in California, and it may be served through its registered agent for service of process, CT Corporation System, 330 N. Brand Boulevard, Glendale, California 91203.

10. Rocket's sole member is Rocket Limited Partnership, a Michigan limited partnership whose partners are Rocket GP, LLC and Rocket LP, LLC, each of which is wholly owned by Rocket Companies, Inc., a Delaware corporation with its principal place of business in Detroit, Michigan. Rocket is therefore a citizen of Delaware and Michigan for purposes of 28 U.S.C. § 1332.

11. From July 2024 until October 2025, Plaintiff's loan was serviced by Nationstar Mortgage LLC d/b/a Mr. Cooper ("Mr. Cooper"). On October 1, 2025, Rocket Companies, Inc. completed its acquisition of Mr. Cooper. On February 2, 2026, Rocket Mortgage, LLC became the successor by merger to Nationstar Mortgage LLC. Rocket is the successor to Mr. Cooper's servicing of Plaintiff's loan and to Mr. Cooper's obligations and liabilities arising from it.

## III. Jurisdiction and Venue

12. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 12 U.S.C. § 2614 because Plaintiff's claims arise under RESPA, a federal statute.

13. This Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which the Class has more than 100 members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and at least one member of the Class is a citizen of a State different from Defendant. Plaintiff is a citizen of California; Rocket is a citizen of Delaware and Michigan. The value of the injunctive relief sought, measured by the mortgage insurance premiums that Class members will otherwise be required to pay after the eleventh year of their loans, exceeds $5,000,000.

14. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a) because they arise from the same nucleus of operative facts as his federal claims.

15. This Court has personal jurisdiction over Rocket because it services mortgage loans secured by real property in California, is licensed to do so by the State of California, is registered to do business in California, and directed the communications at issue to Plaintiff in California.

16. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred here and the property that is the subject of the loan is situated here. Assignment to the Sacramento Division is proper under Local Rule 120(d) because the action arises in Yolo County.

## IV. STATEMENT OF FACTS

### A. HUD fixes the duration of FHA mortgage insurance at origination, using a loan amount that excludes financed UFMIP.

17. The FHA insures residential mortgage loans made by private lenders under the National Housing Act. 12 U.S.C. § 1709(a), (b). The insurance is funded by premiums that borrowers pay. Under 12 U.S.C. § 1709(c)(2), a borrower pays two kinds of premium: a single upfront premium collected at closing, 12 U.S.C. § 1709(c)(2)(A), and annual premiums collected in monthly installments over a period of years, 12 U.S.C. § 1709(c)(2)(B). The upfront premium is the UFMIP; the annual premium is the MIP.

18. FHA borrowers may finance the UFMIP rather than paying it in cash at closing, and, in Rocket's words, it "is standard for FHA loans to have the UFMIP financed into the loan." When the UFMIP is financed, it is added to the loan principal. For that reason an FHA loan has two loan amounts: the Base Loan Amount, which HUD defines as "the mortgage amount prior to the addition of any financed Upfront Mortgage Insurance Premium (UFMIP)," and the total loan amount, which is the Base Loan Amount plus the financed UFMIP. HUD Handbook 4000.1, Glossary ("Base Loan Amount") (rev. Aug. 12, 2026).

19. Congress directed that the financed UFMIP be excluded from the loan amount that fixes how long a borrower pays MIP, and that the value be fixed as of the date the loan is accepted for insurance. The National Housing Act provides that the annual premium must be computed on the insured principal balance "excluding the portion of the remaining balance attributable to the premium collected under subparagraph (A)." It further provides that the length of time the premium is collected is determined by the mortgage's "original principal obligation (excluding any premium collected under subparagraph (A))" measured against "the appraised value of the property (as of the date the mortgage is accepted for insurance)." 12 U.S.C. § 1709(c)(2)(B). HUD's implementing regulation tracks the statute. 24 C.F.R. § 203.284(a)(2).

20. Congress has given HUD discretion in administering these premiums. In 2010, it amended section 1709(c)(2)(B) to provide that the Secretary "may," rather than "shall," collect

annual premiums for the periods the statute lists, and it authorized HUD to "adjust the amount of any initial or annual premium" through "notice published in the Federal Register or mortgagee letter." Pub. L. No. 111-229, § 1, 124 Stat. 2483 (2010). HUD exercised that authority in Mortgagee Letter 2013-04, which applies to every FHA loan with a case number assigned on or after June 3, 2013. HUD Mortgagee Letter 2013-04, Revision of Federal Housing Administration (FHA) Policies Concerning Cancellation of the Annual Mortgage Insurance Premium (MIP) and Increase to the Annual MIP (Jan. 31, 2013). The Mortgagee Letter provides that for "any mortgage involving an original principal obligation (excluding financed Up-Front MIP (UFMIP)) less than or equal to 90% LTV, the annual MIP will be assessed until the end of the mortgage term or for the first 11 years of the mortgage term, whichever occurs first." For any mortgage with an "original principal obligation (excluding financed UFMIP)" above 90%, "FHA will assess the annual MIP until the end of the mortgage term or for the first 30 years of the term, whichever occurs first." *Id.* at 2. HUD has since carried the rule into its Single Family Housing Policy Handbook, whose schedule of mortgage insurance premiums assigns a duration of "11 years" to a loan with a term of more than fifteen years and an LTV of 90.00% or less, and "Mortgage term" to a loan with an LTV above 90.00%. HUD Handbook 4000.1, Appendix 1.0 (Mortgage Insurance Premiums). HUD's FHA Resource Center states the rule the same way: for case numbers assigned on or after June 3, 2013, "LTV less than or equal to 90% at the time of loan origination: Annual MIP will be collected until the end of the loan term, or 11 years, whichever occurs first." HUD, FHA Resource Center, How long is MIP collected for case numbers assigned on or after June 3, 2013? (May 15, 2026). HUD's FHA Connection guide instructs servicers the same way: "[p]er Mortgagee Letter 2013-04, the duration of monthly (annual) mortgage insurance premium (MIP) payments is based on the amortization term and loan-to-value (LTV) ratio at loan origination." HUD, FHA Connection Guide, Loan Balance at Final MIP Date and Final Monthly MIP Payment Date (rev. June 22, 2020).

21. HUD defines the loan-to-value ratio for these purposes as the Base Loan Amount divided by the property's value. HUD Handbook 4000.1, Glossary ("Loan-to-Value (LTV)") (rev.

Aug. 12, 2026) ("The Loan-to-Value (LTV) is computed as the Base Loan Amount divided by the Adjusted Value."). Mortgagee Letter 2013-04 states the same rule, calculating LTV by dividing "the loan amount (prior to the financing of any UFMIP) by the lesser of the purchase price (if applicable) or the appraised value of the home." Mortgagee Letter 2013-04, at 2. Because the ratio uses the Base Loan Amount, financing the UFMIP does not change it. A borrower who closes at 90% and finances the UFMIP is still at 90% and obligated to pay MIP for eleven years only. Mortgagee Letter 2013-04; Form HUD-92900-B (2/2020), at 2.

22. HUD requires the lender to tell the borrower this rule before closing. Form HUD-92900-B, "Important Notice to Homebuyers," instructs the borrower to read it "at the time you apply for the loan" and to return a signed copy to the lender "as proof of notification." Under the heading "Monthly Insurance Premiums," it states that the borrower will pay the monthly premium for either "the first 11 years of the mortgage term, or the end of the mortgage term, whichever occurs first, if your mortgage had an original principal obligation (excluding financed UFMIP) with a loan-to-value (LTV) ratio of less than or equal to 90 percent," or "the first 30 years of the mortgage term, or the end of the mortgage term, whichever occurs first, for any mortgage involving an original principal obligation (excluding financed UFMIP) with an LTV greater than 90 percent." Form HUD-92900-B (2/2020), at 2.

23. The MIP duration is therefore fixed at origination and does not change with the loan's later servicing. The lender computes the Base Loan Amount and the value, transmits them to HUD on the FHA Loan Underwriting and Transmittal Summary (Form HUD-92900-LT), and HUD endorses the loan for insurance on that basis. A servicer that later acquires the loan services it as originated and endorsed. It has no authority to substitute a different loan amount, a different value, or a different ratio. Every servicer of FHA-insured mortgages must itself be a HUD-approved mortgagee. 24 C.F.R. § 202.12(b). HUD makes compliance with its requirements a condition of every mortgagee's approval to participate in the FHA program. A mortgagee must service insured mortgages in accordance with HUD's servicing regulations "and with such additional conditions and requirements as the Secretary may impose," and it must maintain a quality control plan that

"assures compliance with the regulations of this chapter and other issuances of the Secretary regarding loan or mortgage origination and servicing." 24 C.F.R. § 202.5(e), (h).

### B. Mr. Dickerson's loan closed at exactly 90% and was disclosed as an eleven-year MIP loan.

24. On November 15, 2021, Plaintiff signed the loan documents to purchase his home at 1618 Tamarack Road, West Sacramento, California, with a thirty-year, fixed-rate FHA-insured loan from Home Point Financial Corporation ("Home Point"). The FHA case number is 049-1716115-703. The sale price was $665,000. The appraised value was $655,000. Escrow closed, the loan funded, and the grant deed was recorded on November 18, 2021.

25. Home Point set the Base Loan Amount at $589,500. Plaintiff financed the UFMIP of $10,316, bringing the total loan amount, and the principal stated in the promissory note (the "Note"), to $599,816.

26. Home Point computed Mr. Dickerson's loan-to-value ratio at exactly 90.0000%: $589,500 divided by $655,000. The computation appears on a Change of Circumstance disclosure that Home Point generated on November 10, 2021, five days before closing.

27. Home Point recorded the same figures on the HUD-92900-LT that it transmitted to HUD to obtain FHA endorsement: "Mortgage w/o UFMIP" of $589,500.00, "Total UFMIP" of $10,316.00, "Mortgage w/ UFMIP" of $599,816.00, an appraised value of $655,000.00, and an "LTV" of "90.000 %."

28. The Closing Disclosure that Mr. Dickerson received and signed on November 15, 2021, confirmed that Mr. Dickerson was obligated to pay MIP for only eleven years. In the "Projected Payments" table required by federal law, the Closing Disclosure shows a monthly "Mortgage Insurance" payment of $389.41 for "Years 1–11" and, for "Years 12–30," a dash where the mortgage insurance line item would otherwise appear. The estimated total monthly payment drops from $3,780.06 in Years 1 through 11 to $3,390.65 in Years 12 through 30, the difference being the mortgage insurance premium that ends after year eleven.

29. On November 16, 2021, Mr. Dickerson signed Form HUD-92900-B, which informed him that a loan with an original principal obligation excluding financed UFMIP at or below 90% carries MIP for the first eleven years of the term.

30. Mr. Dickerson read the Closing Disclosure and the HUD-92900-B and understood from them that his mortgage insurance obligation would end after eleven years. He accepted the loan, paid the closing costs, and financed the UFMIP on that understanding.

31. Mr. Dickerson's monthly MIP is recomputed each year on the declining principal balance. It is currently $355.85 per month.

**C. Rocket illegally treats Mr. Dickerson's loan as requiring life-of-loan MIP by adding the UFMIP back into the loan amount.**

32. Home Point serviced Mr. Dickerson's loan after origination. Servicing was transferred to Mr. Cooper effective July 1, 2024. Rocket succeeded to the servicing of the loan when it acquired Mr. Cooper on October 1, 2025.

33. On September 8, 2025, while reviewing the breakdown of his mortgage payment to determine when his MIP would end, Mr. Dickerson found that it showed no termination date. He contacted Mr. Cooper, which told him that it was treating the MIP as payable for the life of the loan rather than for eleven years. The classification alarmed him. The loan he had accepted on the understanding that mortgage insurance would end after eleven years now carried that obligation for thirty, at a cost of tens of thousands of dollars. This classification reduces the value of his assumable loan, impacting the market value of his house. He promptly disputed the classification in writing.

34. Rocket's response, repeated in multiple letters, was that Rocket's "internal systems" use a post-closing "Servicing LTV" to calculate MIP obligations, rather than the LTV established at closing, which is the ratio federal law and HUD rules require. 12 U.S.C. § 1709(c)(2)(B); 24 C.F.R. § 203.284(a)(2); Mortgagee Letter 2013-04. Illegally including Mr. Dickerson's financed $10,316 UFMIP in the loan amount, Rocket increased the LTV from the closing LTV of exactly 90% to a "Servicing LTV" of 91.57%. In Rocket's words, "the LTV ratio is calculated based on

the original unpaid principal balance (UPB) of $599,816.00 divided by the original appraised value of $655,000.00."

| | **HUD's Rule** | **Rocket's "Servicing LTV"** |
|---|---|---|
| Loan Amount | $589,500 (Base Loan Amount, before financed UFMIP) | $599,816 (Base Loan Amount plus $10,316 financed UFMIP) |
| Appraised Value | $655,000 | |
| Loan-to-Value Ratio | $589,500 ÷ $655,000 = **90.00%** | $599,816 ÷ $655,000 = **91.57%** |
| Years of MIP | **11** | **30** (Life of Loan) |

35. Rocket has admitted that this recalculation of the loan amount to include UFMIP is the only reason it has imposed an additional nineteen-year MIP obligation on Mr. Dickerson. Rocket's February 16, 2026 letter to Mr. Dickerson lists the "Base loan amount: $589,500.00 (which is 90% of your home's value)," then "Plus: Upfront mortgage insurance premium (UFMIP): $10,316.00," then the "Total loan amount: $599,816.00," and explains: "The UFMIP gets added to your base loan, which brings the total to 91.57% of your home's value." Its December 24, 2025 letter concedes: "The loan would have had a 90% LTV if the loan did not include the PMI and used the amount of $589,500.00 according to the document that you provided. Since the loan does have the MIP calculated into the total amount, we cannot exclude it."

36. Rocket's February 16, 2026 letter to Mr. Dickerson describes the 91.57% figure as "the 'servicing LTV' used to determine mortgage insurance duration under FHA rules," and states that "if the LTV is over 90%, the client must pay mortgage insurance for the life of the loan." The same letter attributes the rule to "FHA's regulations found in FHA Mortgagee Letter 2013-04," and says: "This isn't something we can change." FHA regulations, however, do not permit using a "Servicing LTV" or any LTV other than the LTV established at closing using the Base Loan Amount. 12 U.S.C. § 1709(c)(2)(B); 24 C.F.R. § 203.284(a)(2); Mortgagee Letter 2013-04; HUD Handbook 4000.1, Glossary ("Loan-to-Value (LTV)").

37. Indeed, the very Mortgagee Letter 2013-04 that Rocket attempted to rely on says the opposite. It measures the ratio by the "original principal obligation (excluding financed Up-Front

MIP (UFMIP)).” Mortgagee Letter 2013-04. This rule is consistent with 12 U.S.C. § 1709(c)(2)(B), 24 C.F.R. § 203.284(a)(2), HUD Handbook 4000.1, and Form HUD-92900-B, every one of which excludes financed UFMIP from the ratio that determines MIP duration.

38. Rocket’s letters offered Mr. Dickerson one supposed “remedy”: a new loan from Rocket. The September 11, 2025 letter suggested “refinancing into a different loan product,” and the December 24, 2025 letter repeated the suggestion. The February 16, 2026 letter stated that “[t]he only way to eliminate the PMI” was to “[r]efinance to a conventional (non-FHA) loan,” pay off the loan, or sell the home, and offered to “connect you with a mortgage professional.” The May 26, 2026 letter invited him to “contact our sales team directly” to “explore refinancing options.” Rocket did not present these solicitations as separate marketing. It placed them inside its formal error-resolution responses. In the February 16, 2026 letter, the refinancing offer appears immediately above the boxed “RESPA RESPONSE TO NOTICE OF ERROR” certifying that Rocket had completed “a reasonable investigation into the issues described above.” The May 26, 2026 letter supplied the sales team’s telephone number ahead of the same certification. A refinance would earn Rocket origination fees and put a new loan on its books. It would cost Mr. Dickerson the 3.25% interest rate on his existing loan, which is less than half of prevailing rates today, and the closing costs of a new loan. Rocket’s practice of illegally treating loans as requiring life-of-loan MIP thus creates a problem that Rocket then offers to solve, for a fee, at the borrower’s expense.

### D. Rocket certified six times that a “reasonable investigation” had found no error, while its own file contradicted it.

39. RESPA and its implementing regulation, Regulation X, give a borrower the right to send the servicer a written notice of error. The servicer must then either correct the error or, after conducting a reasonable investigation, explain in writing why it determined that no error occurred and give the borrower access to the documents it relied on. 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.35(e)(1), (e)(4). A servicer’s misclassification of the duration of a borrower’s mortgage insurance is an error relating to the servicing of the loan. 12 C.F.R. § 1024.35(b)(11).

40. Beginning in September 2025, Mr. Dickerson sent Mr. Cooper a series of written notices of error showing that the origination documents computed the ratio at 90.0000%, and citing the HUD authorities that exclude financed UFMIP.

41. Rocket's responses to these notices fell far short of its obligations to conduct a reasonable investigation. On September 11, 2025, Mr. Cooper responded to one of Mr. Dickerson's notices of error. The letter stated: "Following a thorough review of your account, we have determined that the current loan-to-value (LTV) ratio is 91.57%. As your loan was originated after June 3, 2013, and the original LTV exceeded 90%, the private mortgage insurance (PMI) will remain in effect for the duration of the loan."[1] Under the heading "RESPA RESPONSE TO NOTICE OF ERROR," the letter certified: "after completing a reasonable investigation into the issues described above, it has been determined that no error occurred. You have the right to access the documents we used in this investigation, however, only our internal systems were used."

42. Mr. Cooper sent three more letters, dated September 23, 25, and 26, 2025, each stating that it had conducted a reasonable investigation and certifying that no error had occurred.

43. On December 18, 2025, Mr. Dickerson sent a further notice of error, which Rocket received on December 19, 2025. On December 24, 2025, Rocket responded on Mr. Cooper letterhead over the signature "Rocket Mortgage." The letter characterized the notice as "substantially the same as errors previously asserted" and declined to investigate it further. It restated that "the current loan-to-value (LTV) ratio is 91.57%." It refused Mr. Dickerson's request for the loan-level records that would show how the classification was made, stating that "the full set of loan-level data and records, including the LTV from origination, base loan amount, MIP

---

[1] Mr. Cooper's letters refer to the FHA mortgage insurance premium on Plaintiff's loan as "private mortgage insurance (PMI)." FHA MIP is not private mortgage insurance. Rocket's letters do not even agree on who owns Plaintiff's loan. The February 16, 2026 letter identified the "Owner (Investor)" as "GNMA II Servicemac Homepoint," which it described as "a Ginnie Mae investment pool that owns your loan." The May 26, 2026 letter stated that "Rocket Mortgage, LLC, is the current owner of the Note." Rocket's mistakes regarding the nature of the insurance and the owner of the note reflect the overall substandard quality of its investigation.

classification, and duration code, along with any Mortgage Insurance Certificate or FHA Case Query data transmitted to HUD, does not pertain directly to the servicing of the loan, does not identify any specific servicing errors, and is considered proprietary and confidential." While conceding that "[t]he loan would have had a 90% LTV if the loan did not include the PMI and used the amount of $589,500.00," Rocket declined "to change the FHA LTV, or the classification." Rocket certified that "after completing a reasonable investigation into the issues described above, it has been determined that no error occurred," and listed as the documents used in the investigation only the Closing Disclosure and the four prior resolution letters.

44. The Closing Disclosure that Rocket listed as the basis for its December 24, 2025 determination is the document that projects mortgage insurance for Years 1 through 11 and none for Years 12 through 30.

45. On December 25, 2025, Mr. Dickerson sent a final notice of error identifying several inconsistencies in Rocket's own records. Among them: a 91.57% ratio that exists nowhere in the origination or endorsement records; no explanation of who calculated it, when, under what authority, or from what inputs; and a conflict between a life-of-loan classification and the Closing Disclosure's eleven-year projection.

46. On February 3, 2026, Mr. Dickerson submitted a complaint to the CFPB (Case No. 260203-28479433). Rocket responded on February 16, 2026. The letter set out the "Servicing LTV" calculation (see supra ¶¶ 35–36), stated that Mr. Dickerson's FHA insurance was "required for the life of your loan," and certified, for the sixth time, that "after completing a reasonable investigation into the issues described above, it has been determined that no error occurred." Among the documents the letter listed as used in that investigation was the "PMI Disclosure," which is Form HUD-92900-B, the very document that states the rule Rocket was refusing to follow.

47. Of course Rocket knows the correct rule. On April 29, 2026, after a telephone conversation with Mr. Dickerson, Mary Isaac, a Rocket banker, wrote to him: "All FHA loans require a UFMIP at closing and an annual premium, dependent upon LTV. The UFMIP can either

be financed (added to the total loan amount) or paid at closing, but it remains separate from the LTV calculation." Despite knowing the correct rule, Rocket persisted in refusing to correct the error in Mr. Dickerson's LTV calculation.

48. Mr. Dickerson also submitted a complaint to DFPI (Complaint No. CN0039154), which Rocket received on May 4, 2026. Rocket responded on May 26, 2026.[2] The letter labeled the complaint a "Duplicate Request," restated that the loan "closed on November 15, 2021, with an original Unpaid Principal Balance (UPB) of $599,816.00, and a Loan-to-Value (LTV) Ratio of 91.57%," and explained that "[t]he UPB is comprised of the original loan amount of $589,500.00, plus the Upfront Mortgage Insurance Premium (UFMIP) of $10,316.00, totaling $599,816.00. This is standard for FHA loans to have the UFMIP financed into the loan." The letter offered no authority for including the UFMIP in the ratio.

49. Rocket's investigations were not reasonable. Its own file contained the Change of Circumstance disclosure computing the ratio at 90.0000%, the HUD-92900-LT transmitting 90.000% to HUD, the Closing Disclosure projecting eleven years of MIP, and the HUD-92900-B stating the rule. Indeed, Rocket enclosed several of these documents with its own letters. A simple review of its own files and the HUD rules would have quickly shown that the correct LTV was 90%. Rocket nevertheless continued to restate the 91.57% figure and repeatedly certified that no error had occurred.

50. Before filing this action, Plaintiff gave Rocket and its predecessor written notice of the conduct alleged in this Complaint, beginning with his notices of error under 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35 in September 2025, and afforded them more than a reasonable period to take corrective action. Rocket and Mr. Cooper did not correct the classification, and Rocket stated

[2] The May 26, 2026 letter did certify one error, but not as to the MIP duration. Rocket's "RESPA Response to Notice of Error" section stated that "an error occurred in our Response Letter dated February 16, 2026, when we incorrectly advised the loan was FHA-insured." The same letter acknowledged that "the loan type is FHA" and that the enclosed Note "confirms the FHA loan type," and Rocket continues to collect FHA mortgage insurance premiums on the loan.

that it "isn't something we can change." Plaintiff has satisfied any notice-and-cure requirement in his deed of trust.

**E. Rocket's illegal "Servicing LTV" methodology is corporate policy, not an isolated error.**

51. Rocket's letters describe the 91.57% figure not as the product of a method unique to Mr. Dickerson's loan but as the output of its standard company rules: the "servicing LTV used to determine mortgage insurance duration under FHA rules," in which "[t]he UFMIP gets added to your base loan." Rocket says that adding the UFMIP to the loan amount "is standard for FHA loans." It says the ratio was computed using "only our internal systems." It says the resulting classification "isn't something we can change."

52. These statements from Rocket's own letters show that Rocket systematically computes the loan-to-value ratios that determine MIP duration on the FHA loans it services by the same method it used on Mr. Dickerson's loan: it divides the total loan amount, including financed UFMIP, by the value. Rocket then treats as requiring life-of-loan MIP every loan for which that method yields a ratio above 90%. Given the volume of Rocket's business in California, and because FHA borrowers commonly make a 10% down payment and finance the UFMIP, this illegal policy has affected thousands of California loans whose Base Loan Amount was at or slightly below 90% of value at endorsement.

53. Rocket is among the largest mortgage lenders and servicers in the United States, one of the largest in California, and among the largest originators and servicers of FHA-insured loans in the country. Publicly reported mortgage data show that Rocket alone has originated thousands of FHA-insured loans secured by California property in each of the last several years, before counting the California FHA loans it acquired with Mr. Cooper's servicing portfolio.

54. Rocket's failures to investigate and correct servicing errors are part of a pattern. Rocket is the defendant in *Akkus v. Rocket Mortgage, LLC*, a class action alleging that Rocket failed to pay property taxes from borrowers' escrow accounts when due and failed to respond adequately to borrowers' qualified written requests under RESPA. The court denied Rocket's motion to dismiss the escrow class claims, including the claim for pattern-or-practice statutory

damages, holding that a pattern or practice of noncompliance may be shown by violations of any provision of section 2605. *Akkus v. Rocket Mortgage*, *LLC*, 715 F. Supp. 3d 726, 732–33 (D. Md. 2024). In December 2020, the CFPB sued Mr. Cooper, whose servicing business Rocket has since acquired, in the District of Columbia for, among other things, failing to cancel borrowers' private mortgage insurance when they requested it after reaching the statutory loan-to-value threshold and failing to terminate it automatically on the scheduled termination date because its records of those dates were inaccurate. Mr. Cooper resolved the action by a stipulated judgment requiring approximately $73 million in redress to more than 40,000 borrowers and a $1.5 million civil penalty. Complaint ¶¶ 51–56, 97–108, and Stipulated Final Judgment and Order, *CFPB v. Nationstar Mortgage LLC,* No. 1:20-cv-03550 (D.D.C. filed Dec. 7, 2020; judgment entered Dec. 8, 2020). In December 2017, the California Department of Business Oversight, now DFPI, entered a consent order against Mr. Cooper under its CRMLA license. The order found, among other things, that Mr. Cooper "failed to conduct a 'reasonable investigation' as required by 12 United States Code section 2605, subdivision (e), in response to a borrower dispute" because its policies were inadequate, found that the failure violated Financial Code section 50505(a), and required $4.8 million in penalties and new policies and procedures. *In re Nationstar Mortgage, LLC d/b/a Mr. Cooper*, Consent Order ¶ M, Cal. Dep't of Bus. Oversight, CRMLA License No. 4713-1209 (Dec. 4, 2017).

**F. Rocket's illegal loan misclassification injured Mr. Dickerson and the Class.**

55. Rocket's misclassification of Mr. Dickerson's loan is a completed determination, with concrete and immediate impacts on Mr. Dickerson. Rocket has determined that Mr. Dickerson has a legal obligation to pay MIP beginning with the payment due January 1, 2033, the 133rd of the 360 monthly payments the Note requires, and continuing every month through the loan's maturity date of December 1, 2051, a period of 228 months. At his current premium of $355.85 per month, those 228 months of premiums would total roughly $81,000; the actual figure will be somewhat lower because the premium is recomputed annually on the declining balance, but it will certainly be in the tens of thousands of dollars.

56. This misclassification has diminished the present value of Mr. Dickerson's property interests in his loan and his home. FHA-insured loans are assumable by a qualified buyer, and the value of an assumable 3.25% loan to a buyer, and therefore to Mr. Dickerson as seller, depends on the loan's terms. A loan that carries mortgage insurance for its full term is worth less to an assuming buyer than one on which the insurance ends after eleven years.

57. Mr. Dickerson has also already lost money because of the misclassification. After Mr. Cooper's September 11, 2025 response failed to correct the error or to explain why no error had occurred, Mr. Dickerson was required to continue seeking correction through the channels RESPA and Regulation X provide. He prepared and transmitted further notices of error to Rocket; a complaint and follow-up to the CFPB; a complaint, a supplemental submission, and a rebuttal to DFPI; and a Freedom of Information Act request to HUD. In doing so, he paid approximately $20 to print and scan documents after the September 11, 2025 response. Those expenses were incurred to invoke the administrative correction process, not to prepare this lawsuit, and none of these expenses would have been necessary had Rocket treated the loan as federal law and HUD's rules require.

58. Mr. Dickerson also did not receive the loan he was promised. He accepted an FHA loan, paid its closing costs, and financed $10,316 in UFMIP in reliance on the Closing Disclosure's projection of mortgage insurance for eleven years and on the HUD-92900-B's statement of the rule that produced that projection. Rocket has substituted a loan on which the insurance runs for thirty years.

59. Members of the Class have suffered the same injuries. Those whose loans have passed the eleventh year have paid, and are paying, monthly MIP that is not owed. Those whose loans have not yet reached the eleventh year hold loans that Rocket treats as requiring life-of-loan MIP, materially impacting Class members' property interest in their loans and in their homes. Every Class member holds a loan whose assumption value has been reduced by the illegal misclassification.

60. Plaintiff and the Class have no adequate remedy at law for these injuries. RESPA authorizes a borrower to recover damages for a servicer's failure to comply with section 2605, but it does not authorize a private plaintiff to obtain an injunction, and it cannot compel Rocket to correct the classification of any loan. Damages for premiums that will be billed in future years are uncertain in amount and, for Class members whose eleventh year has not arrived, cannot yet be recovered at all. Only an order requiring Rocket to treat FHA loans as HUD's rule requires, and to stop collecting MIP that is not owed, will prevent the injury from recurring every month on every affected loan.

## V. Class Allegations

61. Plaintiff brings this action on his own behalf and, under Federal Rule of Civil Procedure 23(a), (b)(2), and (c)(4), on behalf of the Class, defined as follows:

> All persons who, at any time from the filing of this Complaint to the date of class certification, are borrowers on an FHA-insured mortgage loan secured by real property in California and serviced by Rocket Mortgage, LLC, whose loan (i) was assigned an FHA case number on or after June 3, 2013, (ii) had a term of more than fifteen years, (iii) had a loan-to-value ratio of 90% or less, computed on the loan amount excluding financed UFMIP, as reported to FHA by the originating lender when the loan was submitted for insurance endorsement, and (iv) is treated by Rocket as requiring payment of MIP for more than eleven years.

Excluded from the Class are Rocket; its parents, subsidiaries, affiliates, officers, directors, and employees; any attorneys appearing in this case; and any judge or magistrate judge assigned to this case and the members of their immediate families and staff.

62. Plaintiff reserves the right to amend the Class definition, and to propose subclasses, as discovery reveals how Rocket treats and records FHA loans.

63. **Ascertainability.** Membership in the Class is defined by objective criteria. Each criterion can be determined from records that exist for every FHA loan: the FHA case number and its assignment date; the loan term; the loan-to-value ratio, computed without UFMIP, that the originating lender reported to FHA on the HUD-92900-LT when it submitted the loan for

endorsement; the property address; and the MIP duration Rocket applies in billing the loan. Rocket's letters to Plaintiff refer to "the LTV from origination, base loan amount, MIP classification, and duration code," indicating that Rocket's files contain this information.

64. **Numerosity.** The Class is so numerous that joinder of all members is impracticable. Rocket originates thousands of FHA-insured loans secured by California property every year and services those loans together with the California FHA loans it acquired from Mr. Cooper. Loans whose original principal obligation was at or slightly below 90% of value are a substantial share of any FHA portfolio, and Rocket's statements to Mr. Dickerson indicate that it applies the UFMIP-inclusive methodology to all of them. The Class numbers at least in the thousands.

65. **Commonality.** Questions of law and fact common to the Class include:

(a) whether federal law and HUD rules require the loan-to-value ratio that determines the duration of MIP to be computed using the original principal obligation excluding financed UFMIP;

(b) whether federal law and HUD rules require the loan-to-value ratio determined at closing, rather than a post-closing "Servicing LTV," to be used to determine the duration of MIP;

(c) whether Rocket computes the LTV by including financed UFMIP;

(d) whether Rocket uses a post-closing "Servicing LTV," rather than the loan-to-value ratio determined at closing, to determine the duration of MIP;

(e) whether Rocket's methodology treats loans that qualify for eleven years of MIP under HUD's rules as requiring MIP for the life of the loan;

(f) whether Rocket's conduct is unlawful or unfair within the meaning of the UCL;

(g) whether the Class is entitled to declaratory and injunctive relief.

66. The central question, whether Rocket's methodology complies with HUD's rules, has the same answer for every Class member. Answering it will determine Rocket's liability to the Class as a whole.

67. **Typicality.** Plaintiff's claims are typical of the claims of the Class. Plaintiff's loan was originated at 90.0000% using the Base Loan Amount, was endorsed by FHA on that basis, and is wrongly treated by Rocket as requiring life-of-loan MIP because the financed UFMIP has been added to the numerator. Every Class member's loan is wrongly treated by the same method, and Plaintiff seeks the same relief for himself that he seeks for the Class.

68. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. His interest in an order requiring Rocket to treat FHA loans as HUD's rule requires is in the interest of every Class member, and he has no interest adverse to the Class. He has pursued correction of the error with persistence since September 2025. He has retained counsel with substantial experience prosecuting consumer class actions.

69. **Rule 23(b)(2).** Rocket has acted on grounds that apply generally to the Class. The methodology is a single rule, applied through Rocket's internal systems. The injunctive and declaratory relief Plaintiff seeks is indivisible: an order requiring Rocket to compute MIP duration using the original principal obligation excluding financed UFMIP, to reclassify affected loans, and to stop billing MIP that is not owed. It will benefit every Class member in the same way at once, and it can be implemented by Rocket without individualized determinations. Any monetary relief incidental to that injunction, such as a credit or refund of MIP collected after the eleventh year on a reclassified loan, flows mechanically from the reclassification.

70. **Rule 23(c)(4).** In the alternative, the question whether Rocket's UFMIP-inclusive methodology complies with HUD's rules is appropriate for certification as an issue class under Rule 23(c)(4), because its resolution will materially advance the disposition of the litigation as a whole.

## VI. Claims for Relief

### COUNT ONE – VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C. § 2605(E), AND REGULATION X, 12 C.F.R. § 1024.35

***(brought by Plaintiff individually)***

71. Plaintiff incorporates the preceding paragraphs as though fully set forth here.

72. Plaintiff's loan is a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602(1) and 12 C.F.R. § 1024.2(b). It is secured by a first lien on residential real property designed for the occupancy of one to four families, and it is insured by the FHA.

73. Rocket is a "servicer" of Plaintiff's loan within the meaning of 12 U.S.C. § 2605(i)(2) and 12 C.F.R. § 1024.2(b). It receives Plaintiff's scheduled periodic payments, it has stated in writing that "Rocket Mortgage is the servicer of the loan," and it issued the December 24, 2025, February 16, 2026, and May 26, 2026 responses. Mr. Cooper, whose servicing business and obligations Rocket has assumed, was the servicer when it received Plaintiff's first notices of error and issued the September 2025 responses.

74. Plaintiff's written notices of error, including the notice Mr. Cooper received on September 10, 2025, the notice Rocket received on December 19, 2025, and the notice sent December 25, 2025, were "qualified written requests" within the meaning of 12 U.S.C. § 2605(e)(1)(B) and "notices of error" within the meaning of 12 C.F.R. § 1024.35(a). Each identified Plaintiff's name and account, and each stated the reasons Plaintiff believed the account was in error: Rocket was treating the loan as requiring life-of-loan MIP by computing the loan-to-value ratio with the financed UFMIP included, contrary to HUD's rules and to the origination and endorsement records for the loan.

75. Rocket's misclassification of the duration of Plaintiff's mortgage insurance is a "covered error" under 12 C.F.R. § 1024.35(b)(11), which reaches "[a]ny other error relating to the servicing of a borrower's mortgage loan."

76. Upon receiving a notice of error, a servicer must either correct the error or conduct a reasonable investigation and provide the borrower a written explanation of why it determined that no error occurred, and must advise the borrower of the right to request the documents on which it relied and provide them on request, subject to an exception for confidential, proprietary, or privileged information. 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.35(e)(1), (e)(4).

77. Rocket did not correct the error. It did not conduct a reasonable investigation. A reasonable investigation of a notice asserting that a loan-to-value ratio had been computed with

the wrong numerator would have examined the origination and endorsement records for the loan, all of which were in Rocket's files, and would have determined that HUD's rules do not permit financed UFMIP in the numerator. Rocket instead used "only our internal systems" and restated the 91.57% figure in every letter. It declined to exclude the UFMIP, contrary to all applicable legal authority, including authorities of which Rocket had both actual and constructive knowledge. Despite Plaintiff's requests, it produced no origination, endorsement, or other loan-level record showing that the loan had been treated as having a 91.57% LTV for purposes of MIP duration, or the basis for that treatment. It treated Plaintiff's later notices as duplicative, and wrongly certified six times that no error had occurred in the LTV calculation.

78. Rocket's responses also failed to state the reasons for its determination as Regulation X requires. Restating the conclusion under review and attributing it to "FHA rules" without identifying any authority permitting financed UFMIP to be included in the LTV numerator for purposes of determining MIP duration is not a statement of reasons for rejecting the specific error Plaintiff identified.

79. Rocket's failures were not isolated. The responses to Plaintiff's notices of error were standardized form letters. The September 11, 23, 25, and 26, 2025, December 24, 2025, February 16, 2026, and May 26, 2026 responses each include a section headed "RESPA Response to Notice of Error" that states, in identical language, that its conclusion was reached "after completing a reasonable investigation into the issues described above," without addressing the specific errors Plaintiff had identified. Rocket's failures are part of a pattern or practice of noncompliance with the requirements of 12 U.S.C. § 2605, within the meaning of 12 U.S.C. § 2605(f)(1)(B).

80. As a result of Rocket's failures to comply with section 2605(e), Plaintiff suffered actual damages, including the expenses he incurred in continuing to pursue correction through the notice-of-error process and the regulatory channels available to him after Rocket's first deficient response, and the diminished value of his loan resulting from its continued misclassification.

81. Plaintiff is entitled to recover his actual damages under 12 U.S.C. § 2605(f)(1)(A), additional statutory damages of $2,000 under 12 U.S.C. § 2605(f)(1)(B), and the costs of this action together with reasonable attorneys' fees under 12 U.S.C. § 2605(f)(3).

**COUNT TWO – VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C. § 2605(K)(1)(C) AND (K)(1)(E)**

***(brought by Plaintiff individually)***

82. Plaintiff incorporates the preceding paragraphs as though fully set forth here.

83. Section 2605(k)(1)(C) prohibits a servicer of a federally related mortgage loan from failing to take timely action to respond to a borrower's request to correct errors relating to "allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." Determining the duration of a borrower's mortgage insurance obligation, and billing and collecting the premium, are standard servicer's duties.

84. Section 2605(k)(1)(E) prohibits a servicer from failing to comply with any obligation found by the CFPB, by regulation, to be appropriate to carry out the consumer protection purposes of RESPA. Those obligations include the error-resolution requirements of 12 C.F.R. § 1024.35, which the CFPB adopted under section 2605.

85. Plaintiff asked Rocket, repeatedly and in writing, to correct the classification of his loan. Rocket failed to take timely action to correct it. It has not corrected it to this day.

86. Rocket failed to comply with 12 C.F.R. § 1024.35.

87. Rocket's violations are part of a pattern or practice of noncompliance with section 2605.

88. Plaintiff is entitled to recover his actual damages under 12 U.S.C. § 2605(f)(1)(A), additional statutory damages of $2,000 under 12 U.S.C. § 2605(f)(1)(B), and costs and reasonable attorneys' fees under 12 U.S.C. § 2605(f)(3).

## COUNT THREE – VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200 ET SEQ.

***(brought by Plaintiff on behalf of the Class)***

89. Plaintiff incorporates the preceding paragraphs as though fully set forth here.

90. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Rocket's computation of the loan-to-value ratio that determines MIP duration by including financed UFMIP, its classification of loans on that basis, and its billing and collection of MIP after the eleventh year on loans so treated are business acts and practices within the meaning of the UCL.

91. **Unlawful.** Rocket's practice is unlawful for two independent reasons. First, it violates federal law. The National Housing Act and HUD's implementing regulation exclude financed UFMIP from the original principal obligation that determines how long MIP is collected. 12 U.S.C. § 1709(c)(2)(B); 24 C.F.R. § 203.284(a)(2). HUD Handbook 4000.1 and Mortgagee Letter 2013-04 implement that rule, and HUD's regulations make compliance with them mandatory for every servicer of FHA-insured mortgages: the servicer must be a HUD-approved mortgagee, 24 C.F.R. § 202.12(b), and an approved mortgagee must service insured mortgages in accordance with HUD's regulations "and with such additional conditions and requirements as the Secretary may impose," id. § 202.5(e).

92. Second, Rocket's violations of the federal rules governing MIP duration are violations of California law. The CRMLA requires every licensed mortgage servicer to "comply with all applicable requirements of California and federal law." Cal. Fin. Code § 50130(g). Rocket is licensed under the CRMLA. Section 1709(c)(2)(B) of the National Housing Act, 24 C.F.R. §§ 203.284(a)(2), 202.5(e), and 202.12(b), and the HUD requirements those regulations make binding on FHA servicers are applicable requirements of federal law for Rocket as a servicer of FHA-insured mortgages. Rocket's computation of MIP duration with financed UFMIP included, and its collection of MIP on that basis, violate § 50130(g). A violation of any of these laws is an unlawful business practice under the UCL.

93. **Unfair.** Rocket's practice is unfair. HUD has declared a policy that FHA borrowers whose loans are at or below 90% of value at origination pay mortgage insurance for eleven years and no longer. Rocket's practice nullifies that policy for every borrower who financed the UFMIP, which, by Rocket's own account, is standard for FHA loans. The harm to borrowers, nineteen additional years of premiums on a loan that HUD's rules say should carry eleven, is substantial, and it is not outweighed by any countervailing benefit to borrowers or to competition. Borrowers cannot reasonably avoid the harm, because Rocket controls the classification, refuses to change it, and refuses to disclose the records behind it. Rocket compounds the unfairness by using the error-resolution process itself to solicit new business. In multiple written responses to Plaintiff's notices of error, Rocket represented that its classification was required by FHA rules, told Plaintiff that refinancing was one of the only ways to eliminate the premium, and offered to connect him with a Rocket mortgage professional. A refinance through Rocket would generate origination fees and a new loan for Rocket. Presenting a sales solicitation as the consequence of a compliance determination provides no countervailing benefit to borrowers or to competition.

94. Plaintiff has suffered injury in fact and has lost money or property as a result of Rocket's practice: he paid out of pocket for the notices, complaints, and requests he was required to submit to seek correction of the classification; the present value of his interests in his assumable loan and his home has been diminished; and he did not receive the eleven-year-MIP loan that was disclosed to him.

95. Plaintiff and the Class have no adequate remedy at law.

96. Under Cal. Bus. & Prof. Code § 17203, Plaintiff and the Class are entitled to an injunction requiring Rocket to compute the loan-to-value ratio that determines MIP duration using the original principal obligation excluding financed UFMIP; to reclassify every Class member's loan accordingly; to cease billing and collecting MIP after the eleventh year of the term on any loan so reclassified; and to correct its records and any information transmitted to HUD or to any owner or investor to reflect the correct classification. Plaintiff and the Class are also entitled to

restitution of money acquired by means of the practice, including MIP collected from Class members after the eleventh year of their loans, to the extent Rocket retained it or any portion of it.

97. Plaintiff is entitled to reasonable attorneys' fees under Cal. Code Civ. Proc. § 1021.5, because this action will enforce an important right affecting the public interest and confer a significant benefit on a large class of persons, and the necessity and financial burden of private enforcement make an award appropriate.

## COUNT FOUR – DECLARATORY JUDGMENT, 28 U.S.C. § 2201

***(brought by Plaintiff on behalf of the Class)***

98. Plaintiff incorporates the preceding paragraphs as though fully set forth here.

99. An actual controversy exists between Plaintiff and the Class, on the one hand, and Rocket, on the other, concerning whether HUD's rules permit a servicer to include financed UFMIP in the loan-to-value ratio that determines the duration of MIP on an FHA-insured loan. Rocket maintains that its "Servicing LTV" methodology is required by FHA rules and that the resulting classification cannot be changed. Plaintiff maintains that the methodology violates 12 U.S.C. § 1709(c)(2)(B), 24 C.F.R. § 203.284(a)(2), Mortgagee Letter 2013-04, and HUD Handbook 4000.1. The controversy is concrete: Rocket has applied the methodology to Plaintiff's loan, certified the result, and will bill MIP on that basis for nineteen years beyond the point at which HUD's rules require it to end.

100. Plaintiff and the Class are entitled to a declaration under 28 U.S.C. § 2201 that Rocket's methodology violates 12 U.S.C. § 1709(c)(2)(B) and 24 C.F.R. § 203.284(a)(2), because the loan-to-value ratio that determines the duration of MIP on an FHA-insured loan excludes financed UFMIP from the loan amount; and that, under Mortgagee Letter 2013-04 and HUD Handbook 4000.1, Appendix 1.0, a loan with a term of more than fifteen years whose loan-to-value ratio, so computed, is 90% or less carries MIP for eleven years. Plaintiff and the Class are also entitled to such further relief under 28 U.S.C. § 2202 as is necessary to give effect to that declaration.

## VII. Prayer for Relief

Plaintiff, individually and on behalf of the Class, requests that the Court enter judgment:

(a) certifying the Class under Federal Rule of Civil Procedure 23(a) and (b)(2), or in the alternative certifying the common question under Rule 23(c)(4), appointing Plaintiff as Class Representative, and appointing his counsel as Class Counsel;

(b) declaring that Rocket's inclusion of financed UFMIP in the loan-to-value ratio that determines the duration of MIP violates 12 U.S.C. § 1709(c)(2)(B) and 24 C.F.R. § 203.284(a)(2);

(c) enjoining Rocket to compute MIP duration using the original principal obligation excluding financed UFMIP, to reclassify the loans of all Class members accordingly, to cease billing and collecting MIP after the eleventh year of the term on any reclassified loan, and to correct its records and any information transmitted to HUD, owners, and investors;

(d) ordering Rocket to credit or refund to Class members MIP collected after the eleventh year on reclassified loans, and awarding restitution to the extent permitted by Cal. Bus. & Prof. Code § 17203;

(e) awarding Plaintiff his actual damages under 12 U.S.C. § 2605(f)(1)(A);

(f) awarding Plaintiff statutory damages of $2,000 under 12 U.S.C. § 2605(f)(1)(B);

(g) awarding Plaintiff and the Class their costs and reasonable attorneys' fees under 12 U.S.C. § 2605(f)(3), Cal. Code Civ. Proc. § 1021.5, and any other applicable law;

(h) awarding pre-judgment and post-judgment interest as permitted by law; and

(i) granting such other relief as the Court deems just.

## VIII. Demand for Jury Trial

Under Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,

Dated: October 5, 2026

By: /s/ Michael A. Caddell

Michael A. Caddell (SBN 249469)
mac@caddellchapman.com
Cynthia B. Chapman (SBN 164471)
cbc@caddellchapman.com
Amy E. Tabor (SBN 297660)
aet@caddellchapman.com
CADDELL & CHAPMAN
628 East 9th Street
Houston TX 77007-1722
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

*Attorneys for Plaintiff and the Proposed Class*